THE PEOPLE OF THE STATE OF NEW YORK, PLAIN-
TIFFS, v. E. REMINGTON & SONS, DEFENDANTS.

EX PARTE IMPORTERS AND TRADERS' BANK AND OTHERS,
APPELLANTS.

*Receiver of an insolvent corporation — power of the court to ascertain the validity and
amount of claims made against the estate.*

After the commencement of this action, brought to procure a judgment dissolv-
ing the defendant corporation, and on April 21, 1886, temporary receivers were
appointed and an injunction order issued restraining creditors from suing
the defendant, and all persons from interfering with its property. Three
banks which held the defendant's notes, amounting to $17,000, guaranteed by
Dean & Co. and secured by the pledge of certain chattels belonging to the
defendant, asked the receivers to pay the notes and take the property, or to
consent to a modification of the injunction, so that the chattels pledged might
be sold to pay the notes. The receivers having declined to do either a motion
was made for an order permitting the chattels to be sold, which was granted,
though opposed by the receivers. One of the notes having been paid by a sale
of a portion of the chattels, the guarantors claimed to hold the remaining
chattels as security for their liability upon the other two notes, which claim
was resisted by the receivers, who obtained a second injunction restraining
the banks and the guarantors from selling the chattels, which injunction was
thereafter vacated, the court holding that the chattels were pledged as security
for the three notes. Thereupon the banks and the guarantors asked for an order
directing the receivers to pay such a sum as would indemnify them for their
counsel fees and expenses in the litigation, which was denied by the Special
Term on the ground that it had "no power or jurisdiction to grant such an
allowance in this proceeding."

*Held*, that the Special Term erred in so holding as it clearly had the power to
ascertain by a reference whether these claimants, or either of them, had a
valid claim against this estate, and if they had to fix the amount thereof.
(BOARDMAN, J., dissenting.)

APPEAL from part of an order, made at the Jefferson county
Special Term, and entered in Herkimer county.

The part of the order appealed from is as follows : "That the claim
of R. J. Dean & Co. for counsel fees incurred by the three banks and
the said R. J. Dean & Co., growing out of and connected with the
motion made on the 29th day of May, 1886, before his Honor
Justice WILLIAMS, at Watertown Special Term, for a modification
of the general injunction order issued by the court, and the order

to show cause returnable before his Honor Justice WILLIAMS, at a Special Term, held at Watertown, on the 10th day of July, 1886, and in the matter of reference herein and the motion this day heard and decided, be and the same is hereby refused and disallowed, on the ground that the court has no power or jurisdiction to grant such allowance in this proceeding."

April 20, 1886, this action was brought by the attorney-general to procure a judgment dissolving the defendant (a corporation created under the laws of this State), because of its insolvency, and April 21, 1886, Addison Brill and Albert N. Russell were appointed temporary receivers, pursuant to section 1788 of the Code of Civil Procedure, and at the same time an injunction order was issued pursuant to section 1806, restraining creditors from suing defendant and all persons from interfering with its property. At this time, three banks held defendant's notes, amounting to $17,000, which were guaranteed by R. J. Dean & Co., as security for which certain chattels were pledged by defendant to the banks and said guaran- tors. The banks and the guarantors asked the receivers to pay the notes and take the property, or consent to a modification of the injunction so that the chattels pledged might be sold to pay the notes, but the receivers declined to do either. A motion was made for an order permitting the property pledged to be sold, which was resisted by the receivers, but was granted. After the payment of one of the notes, five hundred rifles, which were pledged as security for it, were unsold, and the guarantors claimed to hold them as security for their liability upon the two other notes, which claim was resisted by the receivers and a second injunction was obtained restraining the banks and the guarantors from selling the rifles, but after a reference it was held that the rifles were pledged as security for the three notes and the injunction was vacated. Thereupon the banks and the guarantors asked for an order directing the receivers to pay such a sum as would indemnify them for their counsel fees and expenses in the litigation, which was denied at Special Term " on the ground that the court has no power or jurisdiction to grant such allowance in this proceeding."

From this order the banks and the guarantors appealed.

*Blandy & Hatch,* for the banks and guarantors, appellants.

*Thomas Richardson,* for the receivers, respondent.

FOLLETT, J. :

It is conceded that the receivers, by denying and resisting, by injunctions, the rights of the banks and guarantors, caused them considerable expense. A principal is liable to indemnify his surety or guarantor for such damages as directly flow from the principal's conduct. Under this rule the estate represented by the receivers is liable to the guarantors for such damages as were caused by the action of the receivers. Whether the estate is liable to the banks for damages is not, from the facts now before the court, entirely clear. (*Lawton* v. *Green*, 64 N. Y., 326 ; High on Inj., § 962.) The appeal book does not show whether the injunctions were issued with or without security; as the first, at least, might have been under sections 1806 and 1990 of the Code of Civil Procedure. The damages caused by an injunction should be determined by the court or by reference. (Code Civil Pro., § 623 ; High on Inj., § 962.)

The Special Term did not deny the application of the banks and guarantors for indemnity upon the ground that the estate was not liable, but upon the ground that the court had not power, in this proceeding or upon a motion, to award the claimants their damages. The court seems to have been led to this conclusion by the mistaken assumption of counsel that the sums claimed were by way of "costs" in the proceeding or motion. The claimant's right to indemnity does not rest upon nor is it controlled by the sections of the Code regulating the allowance of costs. The motion for indemnity seems to have been denied solely upon the ground that it must be sought by action. Section 1807 of the Code requires creditors of the corporation to prove their claims before a referee. The validity and amount of claims against an estate in the hands of receivers, which arise from the acts of the receivers, are not usually determined by action, but by reference. When leave is sought to sue receivers for such claims it is the usual practice to deny the application and order a reference, as the cheapest and most expeditious mode of determining the controversy. No reported exception to this practice has been found when the claimant has been willing to refer, unless the facts out of which the claim arose were so intricate, the law supposed to be applicable so uncertain, and the claim so large as to render this summary mode of trial unsuitable. But this is not such a case. The Special Term

clearly had the power to ascertain by a reference whether these claimants, or either of them, had a valid claim against this estate, and if they had, to fix the amount. (*De Groat* v. *Jay*, 30 Barb., 483; S. C., 9 Abb., 364; *In the Matter of the Receivers of the Globe Ins. Co.*, 6 Paige, 103; *Holbrook* v. *Receivers*, Id., 220, 226; *The Guardian Savings Institution* v. *The Bowling Green Savings Bank*, 65 Barb., 275; 1 Wait's Pr., 199, 200; 2 id., 255.)

That part of the order denying the application of the claimants to have their damages determined and paid is reversed, with ten dollars costs and disbursements.

MERWIN, J. :

If the claim of Dean & Co. was simply for an extra allowance of costs, then I can see how the order at Special Term would be perfectly proper; but if it be deemed, as it may be, a claim for expenses, that would be a lien on the collaterals, or a claim for indemnity as between surety and principal, or a claim for damages by reason of the injunction, then, it seems to me, there would be no doubt about the jurisdiction of the Special Term. The question is not whether a separate proceeding would be more appropriate, for the order was not placed on that ground; nor is the question here as to what provision shall be made for the payment of the claim, if allowed. That is a matter for the Special Term in the first instance to determine. Both proceedings as to the injunction against Dean & Co. were before the Special Term. The existence of the claim was set up in answer to the last order to show cause, and either party could have given evidence about it before the referee. It seems to me that the court there had jurisdiction over it.

As the only question here is as to the jurisdiction and power of the Special Term, I think I must agree with Judge FOLLETT to the reversal of the order.

BOARDMAN, J. :

The defendant, a corporation, failed in April, 1886, and went into the hands of receivers. At the time of such failure the defendant was indebted to the three banks named as appellants, severally, on notes in the sums of $10,000, $3,000 and $4,000 payable to said banks, respectively none of which notes were then due. These

notes were secured by property in the hands of R. J. Dean & Co., warehousemen, and also by the guaranty of payment indorsed thereon by R. J. Dean & Co., who also became entitled to the collateral security upon their payment of the notes. The form of the note for $10,000, the nature of the collateral security and the form of the guaranty and the rights of R. J. Dean & Co. under the same may be found on pages 10 and 11 of the papers on appeal and are the same in effect for the other two notes. At the date of the failure each of said banks held one of said notes, so made, guaranteed and secured. Dean & Co. were also negotiators of loans. We infer from the papers that the defendant furnished them with the notes, schedules of collaterals and guaranty, and that Dean & Co. upon such papers duly signed either procured the notes to be discounted for the defendant by the banks, or advanced to defendant by their own check the amount to be realized from the discount and afterwards had the notes discounted and the proceeds placed to their own credit. In either event the defendant procured money on the collateral security held by Dean & Co. and by the aid of their guaranty based upon such security.

When the receivers of the property of the defendant were appointed an injunction was obtained and served upon each of the appellants enjoining and restraining them from interfering with the property and effects of the defendant or bringing actions against it. At that time the notes were not due, the collateral securities were held by the banks, and when the notes became due, Dean & Co. would become liable to pay the same by reason of their guaranty, but the banks were forbidden to dispose of or transfer the property to purchasers on sale or to Dean & Co. on their payment of the notes. To obviate this difficulty it was necessary to modify the injunction and have the banks and Dean & Co. released from its effect. Messrs. Blandy and Hatch, therefore, on behalf of these parties, on an order to show cause, obtained an order permitting the sale of the collaterals, unless the receivers should redeem them by payment of the notes by a certain day. The collaterals to the $3,000 and $4,000 notes were not so redeemed. but were sold, and failed by some hundreds of dollars to satisfy those notes. In the meantime the $10,000 note had been reduced by payment to $3,300, and 1,000 of the 1,500 Lee rifles (which constituted the collateral

security for the $10,000 note) had been withdrawn. The receivers then tendered to the bank the balance due upon the 10,000 and demanded the 500 rifles, which tender and demand were refused. Dean & Co. then paid the bank the amount due on the note and the warehouse receipts for the rifles were given to them. The receivers then procured another injunction against the bank and Dean & Co., restraining them from selling the 500 rifles, claiming that they were not collateral to the other two notes of $3,000 and $4,000. When the motion to continue this injunction came on to be heard the court ordered a reference to ascertain whether the 500 rifles were a collateral security for all of the notes or only for the $10,000 note. The conclusion of the referee against the receivers' claim was by the order of the court confirmed and all parties have submitted to such order.

That order also contained a further clause, viz: "That the claim of R. J. Dean & Co. for counsel fees incurred by the three banks and the said R. J. Dean & Co., growing out of and connected" with said motions and orders "and in the matter of reference herein and the motion this day heard and decided, be, and the same is hereby refused and disallowed, on the ground that the court has no power or jurisdiction to grant such allowance in this proceeding." From this portion of the order the appeal is taken. If the court has jurisdiction to make such allowance, the order, so far as appealed from, may be reversed and the claim be sent back to the Special Term for allowance on the affidavit of Mr. Blandy, or upon such other evidence as may be permitted by the court to be given. The only question then for decision is the power of the court to grant the appellants' counsel fees and expenses in the proceedings had and taken by them.

These proceedings consist of an application by appellants to set aside or modify the original general injunction and an opposition by them to the order to show cause why the second injunction should not be continued. These were both, in legal effect, motions. In the first case, no costs were asked or granted. In the last, the court gave appellants ten dollars costs, and the referee's charges were ordered paid by the receivers. This seems to us in strict accordance with the provisions of the Code of Civil Procedure (§§ 3236, 3251). (3.) We find no other provisions giving costs in

such cases. The right to costs is purely statutory, and unless given by the statute no court has power to award them. (3 Wait Pr., 453, etc.; *Supervisors of Onondaga* v. *Briggs*, 3 Denio, 173.)

What the appellants seek to obtain by way of allowance in costs is, in fact, the damage which they have suffered by the interference of the principal debtor, through its receivers, with their use and disposition of the collateral security according to the contract. Such damages are, in no sense, costs or expenses to be recognized or allowed upon motions or in the orders made upon motions. They constitute damages which Dean & Co. may, as sureties, be entitled to recover by action against and out of the assets in the hands of the receivers. It is the contract of defendant to indemnify Dean & Co. against loss, costs, charges and expenses which they, as sureties for defendant, may suffer, which constitutes the basis of a claim, if any exists. (Laws of 1858, chap. 314, § 3, as modified by section 1916 of the Code of Civil Pro.) *Thompson* v. *Taylor* (72 N. Y., 32), was, in effect, an action to marshal assets, and, out of them, pay creditors, and, among others, Mattison, who, as surety, had incurred certain reasonable and necessary costs and expenses in excess of costs included in his judgments. It was held that the action was proper, and such costs and expenses were properly allowed to him. It is not an authority for allowing such costs or expenses as a part of the costs of a motion. Undoubtedly, if Dean & Co., if sureties of the defendant, were entitled to full indemnity against the consequences of the failure of the defendant or its receivers to pay these notes, they were also entitled to be repaid such costs and expenses as they necessarily incurred in securing the property pledged for the debt so that it might be applied to the payment of such notes. (*Thompson* v. *Taylor, supra.*) But such costs and expenses, like notary's fees, charges for storage of the rifles, etc., were damages to be deducted from the proceeds of the sale of the collaterals or recovered in an action. (*Griggs* v. *Howe*, 2 Abb. Ct. of App. Dec., 291; *Sheldon* v. *Raveret*, 49 Barb., 203.) We apprehend the rule would be still stronger than the cases cited in favor of a surety. Such damages arose by virtue of the contract setting apart the property as collateral, which provided for deducting all expenses of collection and sale from the proceeds and applying the balance only upon the debts. The obligation, therefore, arises upon an

express contract, as well as upon the implied contract of indemnity, in favor of the guarantors. Such an obligation cannot be enforced by an arbitrary allowance of costs upon a motion, however just and equitable in itself. The appellants, or Dean & Co., must resort to their action if the assets in their hands have prov⌐' insufficient for their protection.

We concur with the learned justice at Special Term that the court had no power or jurisdiction to grant the allowances of counsel fees and expenses as claimed by the appellants.

The order must be affirmed, with ten dollars costs and printing disbursements.

That part of the order appealed from is reversed, with ten dollars costs and printing disbursements.